1  MARC E. MAYER (SBN 190969), mem@msk.com
   MARK C. HUMPHREY (SBN 291718), mxh@msk.com
2  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
3  Los Angeles, CA 90067-3120
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  Attorneys for Plaintiff
   Blizzard Entertainment, Inc.

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     SOUTHERN DIVISION

11

12  BLIZZARD ENTERTAINMENT, INC.,          CASE NO. 8:19-cv-01582-JVS-DFM

13          Plaintiff,                     **FIRST AMENDED COMPLAINT FOR:**

14      v.                                 **(1) COPYRIGHT INFRINGEMENT**

15  JOYFUN INC CO., LIMITED a/k/a SINA
    GAMES OVERSEAS (新浪游戏海外), a        **(2) CONTRIBUTORY**
16  company organized under the laws of     **COPYRIGHT INFRINGEMENT**
    Hong Kong; ZROAD (HONGKONG)
17  CO., LIMITED d/b/a INSTANTFUNS, a       **(3) VICARIOUS COPYRIGHT**
    company organized under the laws of     **INFRINGEMENT**
18  Hong Kong; INTELLIGENT JOYFUL
    INTERNATIONAL LIMITED, a company
19  organized under the laws of the British  **Demand For Jury Trial**
    Virgin Islands; ZROAD, INC., a company
20  organized under the laws of the British
    Virgin Islands; SHANGHAI
21  ZHOUZHONG NETWORK
    TECHNOLOGY CO., LTD. (上海洲众网
22  络科技有限公司), a company organized
    under the laws of China; SHANGHAI
23  YINFAN NETWORK TECHNOLOGY
    CO., LTD. (上海茵繁网络科技有限公
24  司), a company organized under the laws
    of China; WANG HAO (王昊) a/k/a
25  HOWELL WANG, an individual;
    LUTONG ZHOU a/k/a CARLY ZHOU, an
26  individual; DOE 1 a/k/a
    "simosimo2018ab@gmail.com;" DOE 2
27  a/k/a SIMDEV; and DOES 3 through 10,
    inclusive,
28          Defendants.

Mitchell
Silberberg &
Knupp LLP

Plaintiff Blizzard Entertainment, Inc. ("Blizzard" or "Plaintiff"), for its Complaint against Defendants Joyfun Inc Co., Limited a/k/a Sina Games Overseas (新浪游戏海外); ZRoad (HongKong) Co., Limited d/b/a InstantFuns; Intelligent Joyful International Limited; ZRoad, Inc.; Shanghai Zhouzhong Network Technology Co., Ltd. (上海洲众网络科技有限公司); Shanghai Yinfan Network Technology Co., Ltd. (上海茵繁网络科技有限公司); Wang Hao (王昊) a/k/a Howell Wang; Lutong Zhou (周璐彤) a/k/a Carly Zhou; and Does 1 through 10 (collectively, "Defendants"), alleges as follows:

## **Preliminary Statement**

1.    Blizzard is an Irvine, California-based video game developer and publisher whose products include some of the most popular video game franchises in the world, including the *Warcraft* series of games and related products.  By this action, Blizzard seeks to put a stop to, and obtain redress for, the massive infringement of Blizzard's unique and valuable intellectual property in Defendants' mobile and web-based game titled "Glorious Saga" (the "Infringing Game").

2.    As set forth herein, Defendants' infringement of Blizzard's copyrights is willful, deliberate, and brazen.  Defendants did not just copy a few discrete elements from Blizzard's *Warcraft* games; they created a game whose content is almost entirely copied from the *Warcraft* games and related products.  Every character in the Infringing Game was copied from a character from the *Warcraft* games, and many even bear the names of popular characters from the *Warcraft* games such as "Jaina Proudmoore," "Gul'dan," and "Malfurion."  Every monster, creature, animal and vehicle in the Infringing Game was copied from the *Warcraft* Games.  Weapons, amulets, and other objects were taken straight from the *Warcraft* games, without pretense.  Audio cues and sound effects from the *Warcraft* games were reproduced for the Infringing Game.  Defendants even

Mitchell
Silberberg &
Knupp LLP

2

11628847.5

created an icon for their game that plainly is intended to look like the cover of Blizzard's most recent *World of Warcraft* expansion, *Battle for Azeroth*:

 

3.      Defendants know exactly what they are doing, and they specifically know that their conduct is unlawful and infringes Blizzard's intellectual property rights.  Defendants' exploitation was purely for commercial purposes, intended to make their game appealing to potential customers.  Those customers noticed Defendants' copying, as did Blizzard's fans, who left dozens of comments on Defendants' social media pages, such as "Blizzard get your lawyers in here" and "It is all a DIRECT ripoff of Warcraft."  Defendants often delete these comments when they are posted, apparently in an effort to conceal what already is obvious to everyone: that the Infringing Game is a blatant *Warcraft* knock-off.  Tellingly, the initial html code of the Infringing Game's online versions even contained keywords to this effect, including "warcraft," "Blizzard in Glorious Saga," "WOW H5—Glorious Saga," and "World of warcraft."

```
<meta http-equiv="Content-Type" content="text/html; charset=utf-8"/>
<title>Glorious Saga - A horizontal-style game - Free play</title>
<meta name="msvalidate.01" content=""/>
<meta name="keywords" content="Glorious Saga,Glorious Saga H5,Glorious Saga mmorpg,Glorious Saga battle ,Companion of Glorious
rious Saga world,Glorious Saga warcraft,Blizzard in Glorious Saga,WOW H5—Glorious Saga,World of warcraft"/>
<meta name="description" content="Glorious Saga is a horizontal-style RPG H5 game based on instantfuns.The space loaded with role-
games and without the limitation of turn-based battles.You'll still lead your Warlord to a glorious end."/>
<meta name="google-site-verification" content="9uj6ST-tJVPdglBubxpyBVsQNFS2i3TXNTQ1fmbIuU"/>
<meta name="mobile-web-app-capable" content="yes">
<meta name="apple-mobile-web-app-capable" content="yes">
```

Mitchell Silberberg & Knupp LLP

11628847.5

4.      Defendants' conduct has caused, and unless enjoined will continue to cause, serious and irreparable harm to Blizzard and its business.  In the meantime, Blizzard is informed and believes, and on that basis alleges, that Defendants have profited handsomely from their infringement, attracting thousands of consumers to their Infringing Game through the use of Blizzard's intellectual property.  The Court immediately should put a stop to this conduct and award the maximum damages allowable by law.

## Jurisdiction and Venue

5.      This is a civil action alleging copyright infringement under the Copyright Act, 17 U.S.C. § 501.  This Court has exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1338.

6.      This Court has personal jurisdiction over Defendants, including because Defendants have engaged in, contributed to, and induced the infringing conduct at issue within the United States and the State of California and have purposefully directed their activities at the United States and at California.  Among other things, Blizzard is informed and believes, and on that basis alleges, that:

(a)      Each of the Defendants or their respective agents are doing or have been doing business in the State of California and the United States, including by distributing the Infringing Game or causing the Infringing Game to be distributed on California-based platforms such as Google Play; selling or helping to sell "virtual" items or currency to customers located in the United States; collecting money from United States users; marketing their infringing products to U.S. and California customers; relying on U.S. and California-based Internet and content-delivery services such as Cloudflare; and advertising their infringing content or causing it to be advertised via U.S.-based digital platforms such as California-based Facebook.

Mitchell
Silberberg &
Knupp LLP

11628847.5

4

1    (b)    Defendants have entered into contracts with persons or entities

2  in the United States, including advertisers, Internet service providers, payment

3  processors, and software providers.

4    (c)    Defendants have entered into financial transactions with

5  persons and entities in the United States.

6    (d)    Defendants have engaged in a variety of infringing acts, or have

7  facilitated, contributed to, induced, or controlled infringing acts in the State of

8  California and the United States, such as knowingly uploading infringing content

9  to mobile platforms such as the Google Play Store, Facebook, and the Microsoft

10  Store; licensing infringing content to persons or entities in the United States; and

11  knowingly financing, supporting, and otherwise causing the production, marketing

12  and distribution of infringing content with knowledge of its infringing nature.

13    (e)    Defendants know that the damages and other harmful effects of

14  Defendants' infringing activities occur in the United States and primarily in

15  California, where Blizzard has its principal place of business and where it has a

16  substantial number of customers.

17    7.    Venue in this Court exists under 28 U.S.C. § 1391(b)(2) because a

18  substantial part of the events giving rise to the claims alleged in this Complaint

19  occurred in this District, and because Blizzard has suffered injury in this District

20  and Defendants have directed their infringing activities to residents of this District.

21

22    **<u>The Parties</u>**

23    8.    Blizzard is a Delaware corporation organized and existing under the

24  laws of the State of Delaware, with its principal place of business in Irvine,

25  California.  Blizzard is a developer and publisher of interactive video and computer

26  games for a variety of platforms, including personal computers, game consoles,

27  and mobile devices.

28

Mitchell
Silberberg &
Knupp LLP

5

11628847.5

9. Blizzard is informed and believes, and on that basis alleges, that defendant JoyFun Inc Co., Limited a/k/a Sina Games Overseas (新浪游戏海外) ("Sina Games" or "JoyFun") is incorporated under the laws of Hong Kong, and has a corporate address at Unit 417, 4th Floor, Lippo Centre, Tower Two, No. 89 Queensway, Admiralty, Hong Kong. Blizzard is informed and believes, and on that basis alleges, that Sina Games is a direct or indirect subsidiary of Sina Corp., a software and technology company that is traded on the NASDAQ stock exchange. Sina Games is in the business of developing and distributing video games for the international marketplace outside of China, including the United States, and stated as early as 2013 its intention "to publish a series of successful and fun online games in North America with an ever-expanding portfolio with a wide variety of games," claiming to be "supported by six game studios in China."[1] Blizzard is informed and believes, and on that basis alleges, that the operations of Sina Games are substantially intertwined with the operations of the other Defendants and that Sina Games has provided support and assistance with respect to the operation, development, marketing, promotion, and monetization of the Infringing Game, as further set forth herein.

10. Blizzard is informed and believes, and on that basis alleges, that defendant ZRoad (HongKong) Co., Limited d/b/a InstantFuns ("ZRoad HK") is incorporated under the laws of Hong Kong, with a corporate address at Flat/Rm 1113A 11/F Ocean Center, Harbour City, 5 Canton Rd., Tsim Sha Tsui, Kowloon. ZRoad HK claims to be the current owner of exclusive rights, including copyrights, in the Infringing Game and in various websites pursuant to which the Infringing Game was marketed and offered to the public. Blizzard is informed and believes, and on that basis alleges, that ZRoad HK, acting in concert with other Defendants, including Sina Games, is the U.S. publisher of the Infringing Game

---

[1] *See, e.g.,* https://www.gamasutra.com/view/pressreleases/204267/Joyfun_Unleashes_Ultimate_Naruto.php.

Mitchell Silberberg & Knupp LLP

6

11628847.5

and is responsible for the marketing, advertising, distribution, and servicing of the Infringing Game in the United States and other parts of the world. Blizzard further is informed and believes, and on that basis alleges, that at all relevant times ZRoad HK has been purportedly owned and controlled by Defendants Wang and Zhou, but ZRoad HK is in fact intertwined with and acts in furtherance of the interests of Sina Games and its agents, including with respect to the Infringing Game.

11. Blizzard is informed and believes, and on that basis alleges, that defendant Intelligent Joyful International Limited ("IJIL") is incorporated under the laws of the British Virgin Islands, with corporate addresses at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands, and Blvrd Gral Rodolfo Sánchez Taboada 1600, 22000 Tijuana, B.C. Blizzard is informed and believes, and on that basis alleges, that IJIL is a shell company without offices or employees and exists in whole or in part to obscure the actual parties responsible for the Infringing Game. IJIL has purported to be among the owners or prior owners of the copyright in the Infringing Game and related Internet websites and is among the developers, distributors, and/or publishers of the Infringing Game.

12. Blizzard is informed and believes, and on that basis alleges, that defendant ZRoad, Inc. ("ZRI") is incorporated under the laws of the British Virgin Islands, and has a corporate address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands. Blizzard is informed and believes, and on that basis alleges, that ZRI is a direct or indirect subsidiary or affiliate of ZRoad HK and/or of Sina Games and that it is a developer, distributor, and/or publisher of the Infringing Game. Blizzard also is informed and believes, and on that basis alleges, that ZRI is a shell company without offices or employees and exists in whole or in part to obscure the actual parties responsible for the Infringing Game. ZRI has purported to be among the

owners or prior owners of the copyright in the Infringing Game and related Internet websites.

13.     Blizzard is informed and believes, and on that basis alleges, that defendant Shanghai Zhouzhong Network Technology Co., Ltd. (上海洲众网络科技有限公司) ("SZNT") is incorporated under the laws of the People's Republic of China.  Blizzard is informed and believes, and on that basis alleges, that SZNT is directly and wholly owned by Sina Games as a sole proprietorship of Sina Games; that it shares contact information and office facilities with ZRoad HK, ZRI, and other Sina Games-related entities; that it together with Sina Games is commonly referred to as "Sina-Joyfun" and/or "Sina Games Overseas;" that it has stated it is "responsible for game development, operation and distribution in overseas markets" and aims to "export all the outstanding games of Sina Games;" and that it is a developer, distributor, and/or publisher of the Infringing Game.

14.     Blizzard is informed and believes, and on that basis alleges, that defendant Shanghai Yinfan Network Technology Co., Ltd. (上海茵繁网络科技有限公司) ("SYNT") is incorporated under the laws of the People's Republic of China.  Blizzard is informed and believes, and on that basis alleges, that SYNT is owned, controlled, or otherwise affiliated with Sina Games; that it shares contact information and office facilities with ZRoad HK, ZRI, SZNT, and other Sina Games-related entities; and that it asserts it "is responsible for the overseas operation of Sina Weibo Games" and is "committed to exporting Sina games and excellent domestic online and mobile games overseas." On information and belief, SYNT is responsible for the development and/or distribution of the version of the Infringing Game made available via the Microsoft App store and is a developer, distributor, and/or publisher of the Infringing Game.

15.     Blizzard is informed and believes, and on that basis alleges, that defendant Wang Hao (王昊) a/k/a Howell Wang ("Wang") is an individual located at (1) Room 605, No. 518, Anyuan Rd. Putuo District, Shanghai, China, and/or (2)

Room 404, No. 100 Jiangsu North Road, Changning District, Shanghai, China. Blizzard is informed and believes, and on that basis alleges, that Wang, a citizen of Canada, is an owner, director, and officer of Sina Games, ZRoad HK, and other Defendants; acts as chief executive officer of Sina Games and of SZNT, and was the original registrant of the Joyfun.com domain name and website on behalf of Sina Games. On information and belief, Wang was directly involved in the creation, distribution, and/or marketing of the Infringing Game; and/or has directed the infringement described in this Complaint or was a controlling force behind such infringement.

16.     Blizzard is informed and believes, and on that basis alleges, that defendant Lutong Zhou (周璐彤) a/k/a Carly Zhou is an individual located at (1) 63 Cariglia Trail, Markham, Ontario, Canada, and/or (2) 15 Greenview Ave, AP1112 North York, Ontario, M2M 4M7, Canada. Blizzard is informed and believes, and on that basis alleges, that Zhou is, or at all relevant times was, a founder, owner, director, and officer of ZRoad HK and other Defendants, and created, registered, and administered the domain names and websites for the Infringing Game. On information and belief, Zhou was directly involved in the creation, distribution, and/or marketing of the Infringing Game; and/or directed the infringement described in this Complaint or was a controlling force behind such infringement.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as Does 1 through 10, inclusive, are unknown to Blizzard, which sues said defendants by such fictitious names (the "Doe Defendants"). If necessary, Blizzard will seek leave to amend this complaint to state their true names and capacities. All of the Doe Defendants are liable to Plaintiffs as a result of their participation in all or some of the acts hereinafter set forth. (All of the Defendants, including the Doe Defendants, collectively are referred to herein as "Defendants").

18.     Blizzard is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, all of the Defendants acted in concert to knowingly cause, facilitate, control, induce, or otherwise participate in the infringement alleged in this Complaint.

## **Blizzard and its Games**

19.     Blizzard is a computer game developer and publisher, engaged in the business of developing, producing, marketing, and distributing high-quality computer and video games.  Among Blizzard's products are the games in the *Warcraft* game franchise (the "Warcraft Games), which include the strategy game *Warcraft III*, the online role-playing game *World of Warcraft* (and its expansions), and the online collectible card game *Hearthstone.*  The Warcraft Games are among the most successful games ever created, have been played by millions of people around the world, and have won countless industry awards.

20.     The first Warcraft Game, *Warcraft: Orcs and Humans*, was released in 1994, followed by *Warcraft II* in 1995, and *Warcraft III* in 2002.  *Warcraft I, II, and III* are computer strategy games, in which the player takes control of an army of fantastical humanoids and creatures and engages in battle with opponents across a persistent series of mythical landscapes.  *Warcraft III* is one of the most popular strategy games in the world, including in China, and has been played, and continues to be played, by millions of people around the world.

21.     In 2004, Blizzard released the hugely popular and groundbreaking game *World of Warcraft*, an online role-playing game featuring the locations, characters, creatures, monsters, and "lore" (*i.e.,* mythical history) first developed in *Warcraft III* and other *Warcraft* games.  Blizzard has released seven "expansion packs" to *World of Warcraft* that continue or expand the game's story and that introduce new characters, regions, monsters, and other game content.  The most recent *World of Warcraft* expansion (*Battle for Azeroth*) was released in 2018.

Mitchell
Silberberg &
Knupp LLP

11628847.5

10

1  *World of Warcraft* has been played, and continues to be played, by millions of
2  people around the world.  *World of Warcraft* remains to this day one of the most
3  popular online role-playing games in the world (if not the most popular).  *World of*
4  *Warcraft* is particularly popular in China, where certain of the Defendants are
5  located, and in the United States, which is among the countries targeted by
6  Defendants.

7       22.     In addition to the *Warcraft* strategy games and *World of Warcraft*,
8  Blizzard has developed and released the competitive online games *Hearthstone*
9  and *Heroes of the Storm*.  These games feature characters, monsters, creatures, and
10  other content from *Warcraft III* and *World of Warcraft*.  *Hearthstone* is among the
11  world's most popular online collectible digital card games.  *Heroes of the Storm* is
12  an online team-based multiplayer game in which players can elect to play as one of
13  many well-known characters from the Warcraft Games.  Millions of people around
14  the world have played, and continue to play, *Hearthstone* and *Heroes of the Storm*.

15       23.     Blizzard is the owner of valid and subsisting registered copyrights in
16  each of the Warcraft Games.  A list of the Warcraft Games at issue and their
17  copyright registration numbers is attached hereto as **Schedule A**.

18       24.     All of the Warcraft Games take place in the same fictional universe:
19  the world of "Azeroth."  Azeroth is a massive and detailed fantasy world
20  containing cities, dungeons, wilderness landscapes, and unusual structures and
21  buildings.  Azeroth is populated by a diverse set of unusual and distinctive
22  mythical races, creatures, animals, people, monsters, and characters.  Azeroth, its
23  landscapes, its cities, its structures, and its inhabitants are depicted visually within
24  the Warcraft Games.

25       25.     In addition to its depiction in the Warcraft Games, the unique
26  fictional world of *Warcraft* is expressed, depicted, and further developed in a
27  variety of licensed fictional works and tie-in products and merchandise such as
28  comic books, novels, art books, posters, action figures, board games, card games,

Mitchell
Silberberg &
Knupp LLP

11628847.5

11

tabletop role-playing games, encyclopedias, and a major motion picture. Collectively, the Warcraft Games and Blizzard's licensed *Warcraft*-related works, products, and merchandise comprise an overarching "Warcraft Universe." The creatures, animals, people, monsters, and characters that inhabit or comprise the Warcraft Universe are depicted and portrayed in a distinct and consistent manner in the Warcraft Games and in all *Warcraft*-related tie-in products and merchandise.

26. Several distinct humanoid or anthropomorphic "races" populate the Warcraft Universe, including Humans, Elves, Orcs, Trolls, Dwarves, Gnomes, Tauren, and Pandaren. These various "races" have distinct and unique appearances, wear distinctive costumes or armor, and ride distinct mounts or vehicles. For example, Night Elves in the Warcraft Universe appear as tall purple-skinned humanoids with huge, exaggerated ears and green or blue hair. Orcs appear as huge, muscular green or brown humanoids with pointed ears and large protruding teeth or tusks in their lower jaw. Trolls in the Warcraft Universe appear as tall but hunched-over, with blue or purple skin, long tusks protruding from their jowls or lower jaws, long noses and ears, and large crests of colorful hair.

27. The Warcraft Universe also includes hundreds of different animal species, creatures, and monsters. Some creatures and monsters that players of the Warcraft Games frequently encounter in the Games are "Murlocs," "Frostwolves," "Cinder Kittens," "Razzashi Raptors," and "Hawkstriders." All of these animals and creatures are depicted in a distinct and consistent manner in the Warcraft Games and in products depicting the Warcraft Universe.

28. The Warcraft Universe includes many distinct, recurring, and immediately recognizable characters, including both heroes and villains. These characters have unique names and appearances, wear distinctive clothing, use distinctive "signature" weapons, and have unique powers and abilities. For example, Illidan Stormrage is a Night-Elf-turned-demon, usually depicted as a muscular purple-skinned Night Elf with long black hair and intricate tattoos

Mitchell
Silberberg &
Knupp LLP

11628847.5

adorning his torso and arms. He typically wears long, frayed pants and a loincloth, and wields two long, distinct, bladed weapons. Jaina Proudmoore is a blond-haired human wizard who typically wears a blue dress and hooded cloak and carries a long staff topped with a glowing ice shard. Sylvannas Windrunner is a Night Elf who carries a distinctive bow, has glowing eyes, and wears a hooded cloak and purple armor. Many of these unique Warcraft characters are depicted in action figures, comic books, novels, and artwork.

29.    Many other distinct and protectable elements are embodied and encompassed within the Warcraft Games and Warcraft Universe. These include, but are not limited to, fictional locations and landmarks such as the city of Stormwind; in-game "icons" (small pieces of artwork) that represent spells, abilities, weapons, amulets, or other items usable by players; unique-looking vehicles or rideable "mounts" such as airships, "Mekgineer Choppers," and giant turtles; dungeons such as "Blackwing Lair" or the "Temple of Ahn'qiraj"; and distinct sound and musical effects.

30.    Each of the creatures, characters, races, monsters, locations, icons, sound files, artwork, objects, buildings, vehicles, weapons, and other assets that comprise the Warcraft Games and Warcraft Universe are the product of extensive talent, creativity, and artistry on the part of Blizzard's artists, programmers, digital modelers, and sound designers. As such, they represent Blizzard's unique and protectable creative expression.

## **Defendants and Their Involvement With The Infringing Game**

31.    Because of the immense popularity of the Warcraft Games and Warcraft Universe, unethical game developers or publishers often attempt to trade off of Blizzard's intellectual property by appropriating for their games characters, creatures, monsters, or other creative elements from the Warcraft Games and related products. The Infringing Game is among the latest to do so.

Mitchell
Silberberg &
Knupp LLP

13

11628847.5

32.     Blizzard is informed and believes, and on that basis alleges, that Defendants are a group of affiliated companies that together are in the business of developing, marketing, distributing, and monetizing mobile or web-based games designed to be played on mobile phones or computer Internet browsers.  Among the games offered to the public by Defendants or their affiliates are a variety of games based on characters from well-known entertainment franchises such as "Pokémon," "Yu-Gi-Oh!," and "Sword Art Online."  Blizzard is informed and believes, and on that basis alleges, that some or all of these games include third-party intellectual properties without license or authorization from the copyright owners.  Thus a substantial part of Defendants' business (if not the entirety of its business) is making and selling knock-off games that infringe popular entertainment properties.

33.     One of the games released to the public by Defendants or with the participation of Defendants is the Infringing Game, *Glorious Saga.*  The Infringing Game was marketed to the public as a product developed by or originating from "Instantfuns" or "Instantfuns Game."  However, there is no registered corporate entity with the name "Instantfuns."  Rather, Blizzard is informed and believes, and on that basis alleges, that "Instantfuns" is a fictitious name used by several interrelated companies located or incorporated in Hong Kong, the British Virgin Islands, and mainland China.  Blizzard is informed and believes, and on that basis alleges, that all of the Defendants are affiliated with Sina Games but seek to obscure this affiliation and confuse the public, including American consumers and copyright owners such as Blizzard, regarding the actual source of "Instantfuns" games.  As set forth herein, Blizzard is informed and believes, and on that basis alleges, that InstantFuns' business is part of the overall business strategy of Sina Games and is focused on the creation, distribution, marketing, and monetization of games made in China for English-speaking markets, including the United States.

Mitchell
Silberberg &
Knupp LLP

11628847.5

14

34.     Blizzard is informed and believes, and on that basis alleges, that Defendants collectively are responsible for the creation, distribution, marketing, and monetization of the Infringing Game in the United States.  Blizzard also is informed and believes, and on that basis alleges, that, each of the Defendants is affiliated with the "Sina-Joyfun" network of entities, conducts business through e-mail accounts at Joyfun.com and/or Zroad.me, and played a specific and integral role with respect to the Infringing Game.  Although discovery is necessary to determine the full nature and extent of the activities of each of the Defendants named in this action, Blizzard is informed and believes, and on that basis alleges, that Defendants were engaged in at least the following activities:

35.     **The ZRoad Defendants.**  Blizzard is informed and believes, and on that basis alleges, that ZRoad HK, ZRI, and IJIL (the "ZRoad Defendants"), under the direction of Sina Games' co-founder and CEO Defendant Wang, are the entities that held themselves out at various times as responsible for the marketing and distribution of the Infringing Game in the United States.

36.     Blizzard is informed and believes, and on that basis alleges, that in or about April 2018, ZRoad HK acquired the exclusive right to make and distribute English-language versions of the Infringing Game in the United States from a domestic Chinese entity (the "ZRoad Publishing Agreement").  Pursuant to the ZRoad Publishing Agreement, the ZRoad Defendants created or oversaw the creation of the final form of the English-language Infringing Game; created and maintained portions of the websites dedicated to the Infringing Game, such as Instantfuns.com and Zroad.me (collectively, the "InstantFuns Websites"); entered into agreements with Google and Microsoft for the distribution of the Infringing Game on the Google Play and Microsoft Stores in the United States, entered into agreements with XSolla and similar third-party platforms for payment services for the Infringing Game (including for payments from United States players); uploaded the Infringing Game app to Google servers for further distribution to

Mitchell
Silberberg &
Knupp LLP

15

11628847.5

members of the public; and engaged in extensive advertising and promotion for the Infringing Game in the United States and other English-speaking countries.  The ZRoad Defendants also engaged in ongoing customer and technical support (including to customers in the United States) through social media platforms, including by regularly posting to U.S.-based websites such as Facebook and Twitter and by setting up and participating in "chat rooms" on the U.S.-based social media platform "Discord."

37.     Blizzard is informed and believes, and on that basis alleges, that each of ZRoad HK, ZRI, and IJIL has at various times purported to own or control the Infringing Game and the InstantFuns Websites, sometimes simultaneously and contradictorily.  At various times, different iterations of the InstantFuns Websites have stated, "All rights reserved to INTELLIGENT JOYFUL INTERNATIONAL LIMITED," "Copyright All rights reserved to ZROAD (HONGKONG) CO., LIMITED," and "Copyright All rights reserved to ZRoad Inc."  As this language changed, other aspects of the InstantFuns Websites remained unchanged, including the email address generated by clicking the link "Contact Us."

38.     The InstantFuns Websites share numerous features with Sina Games' "official" website at Joyfun.com.  Specifically, the Instantfuns Website and the Joyfun.com website share nearly identical Terms of Service and significant portions of their underlying code.  Blizzard is informed and believes, and on that basis alleges, that these similarities are not coincidental, but reflect common ownership and control between the ZRoad Defendants and Sina Games.  For example, the web domains of the ZRoad Defendants' share the same hosting and adjacent IP addresses with Joyfun.com, and the ZRoad Defendants share telephone numbers and physical addresses with Sina Games and/or its affiliates, including SZNT and SYNT.

39.     For all of the reasons set forth herein, Blizzard is informed and believes, and on that basis alleges, that with respect both to each other and to other

Defendants, the ZRoad Defendants are not separate or independent corporate entities and have no separate corporate identity, but instead are shell companies or mere instrumentalities owned or controlled by the exact same person or persons, including Defendants Wang and Sina Games, and are used interchangeably to effectuate a common scheme and purpose.

40.     **The Shanghai Defendants.**  Blizzard is informed and believes, and on that basis alleges, that SZNT and SYNT (the "Shanghai Defendants") are mainland-China affiliates of Sina Games that also directly participated in the creation and distribution of the Infringing Game.  Among other activities, the Shanghai Defendants created an account with the Microsoft App Store, uploaded the Infringing Game to that platform, and made the Infringing Game available to users in the United States and elsewhere.  On the Google App Store, the Infringing Game attributed to "Instantfuns" provided the Shanghai office address of SZNT and SYNT.  On information and belief, the Shanghai Defendants also participated in the creation and/or maintenance of the Infringing Game's active Facebook pages to market the Infringing Game and to communicate with players of the Infringing Game, including by offering "free luxury gift packs" to individuals who "followed" the Facebook page and contacted the administrator of that page.

41.     Blizzard is informed and believes, and on that basis alleges that each of the Shanghai Defendants is affiliated with Sina Games (i.e. with JoyFun), is owned or controlled by the same people or entities that own or control Sina Games, and at times does business as "JoyFun" or "Sina Games."  Upon information and belief, and according to public records and other available documents, the Shanghai Defendants use the Joyfun.com and ZRoad.me domain names used by Sina Games and the ZRoad Defendants and share physical addresses and telephone numbers with Sina Games and the ZRoad Defendants.

42.     **Sina Games / JoyFun.**  Blizzard is informed and believes, and on that basis alleges, that JoyFun, commonly known as "Sina Games Overseas," at all

Mitchell
Silberberg &
Knupp LLP

17

relevant times has been substantially directed by its co-owner and co-founder Defendant Wang with the participation of its co-owner Sina Corp. and its international subsidiaries and affiliates – i.e., the same parties who also substantially own or control the ZRoad Defendants and the Shanghai Defendants. Blizzard is informed and believes, and on that basis alleges, that at all relevant times, Defendant Wang's sole co-director at Sina Games has been Liu Yunli (刘运利), a Sina Corp. senior executive who is currently Chairman and CEO of the company Sina Weibo.

43.    Blizzard is informed and believes, and on that basis alleges, that JoyFun's operations and affairs are substantially intermingled with the ZRoad Defendants and the Shanghai Defendants, and JoyFun provided material assistance to these Defendants in connection with their development, operation, distribution, monetization, and exploitation of the Infringing Game in the United States.  By way of example, JoyFun's representatives, using Joyfun.com email addresses, issued press releases, tweets, and other online messages promoting the Infringing Game and other games published by "Instantfuns."  In some of those promotional materials, JoyFun purports to be located in the United States.  As noted above, much of the source code and other content on the Joyfun.com website is substantially identical to that found on the InstantFuns websites.

44.    Blizzard is informed and believes, and on that basis alleges, that JoyFun directed the creation of, and provided the ZRoad Defendants and/or the Shanghai Defendants with, software that was integrated into the Infringing Game, known as the JoyFun SDK.  Blizzard is informed and believes, and on that basis alleges, that among other functions the JoyFun SDK enabled the Infringing Game to be monetized in the United States through XSolla and other payment platforms, and to be advertised in the United States through various platforms.  In order for the Infringing Game to interoperate with the JoyFun SDK, it was assigned a JoyFun "app ID" number and regularly interacted with JoyFun's computer servers.

45.     Blizzard is further informed and believes, and on that basis alleges, that JoyFun provided the ZRoad and Shanghai Defendants with a variety of other services and facilities necessary to promoting and operating the Infringing Game, such as Internet hosting services, telephone services, customer support services, credit card and financial services, and domain name and email services.  At all relevant times, JoyFun, including but not limited to through its co-owner and CEO Wang, knew or had reason to know that the Infringing Game was being distributed in the United States and was infringing Blizzard's copyrights.

46.     **The Individual Defendants**.  Blizzard is informed and believes, and on that basis alleges, that together with the corporate parents of Sina Games, defendant Wang substantially owns and controls JoyFun, the ZRoad Defendants, and the Shanghai Defendants, doing so either on his own behalf or as agent for Sina Games' corporate parents and affiliates.  Blizzard also is informed and believes, and on that basis alleges, that Wang currently owns 100% and is sole director of ZRoad HK; is the co-founder, co-owner, and CEO of JoyFun; and is the CEO and indirect co-owner of SZNT.  Blizzard is informed and believes, and on that basis alleges, that Wang and Zhou participated in, coordinated, and oversaw the development and distribution of the Infringing Game in the United States, including on behalf of Sina Games.

47.     Blizzard is informed and believes, and on that basis alleges, that in an effort to obfuscate their involvement with the Infringing Game (including their relationship to JoyFun and to Sina Corp. and its affiliates), confuse Blizzard and other copyright owners, and avoid liability in the United States for the Infringing Game, Wang and Zhou purported to delegate certain specific functions relating to the Infringing Game to various Wang and Zhou-controlled companies, including the ZRoad Defendants.  In fact, however, the various Defendants do not have a separate corporate existence.  They share offices, employees, Internet hosting services, adjacent IP addresses, telephone numbers, domain names, software code

1    and development teams, marketing and advertising materials and staff, vendor

2    relationships, and legal documents.

3       48.    Plaintiffs are informed and believe, and on that basis allege, that

4    Wang and Zhou directly and knowingly participated in the acts of infringement

5    alleged herein, maintained a continuing connection with the other Defendants with

6    respect to the infringing acts, supervised the acts of infringement alleged herein,

7    exercised control over the acts of infringement alleged herein, and personally

8    benefitted or profited from the infringement.  As a result, Wang and Zhou are

9    jointly and severally liable for the infringement alleged herein.

10      49.    Plaintiffs are further informed and believe, and on that basis allege,

11   that there exists a unity of interest and ownership between and among each of the

12   Defendants, and between the Individual Defendants, the Shanghai Defendants, the

13   ZRoad Defendants, and Sina Games, such that no separateness between these

14   entities exists.  Additionally, adherence to the fiction of the separate existence of

15   the Defendants would sanction a fraud or promote injustice, including by enabling

16   certain of Defendants to hide behind corporate shell companies, divert assets from

17   such companies, or raise jurisdictional defenses based on the existence of such

18   companies.  As a result, the Court should pierce the corporate veil and find all of

19   the Defendants jointly and severally liable for the infringement alleged herein.

20

21                      **The Infringing Game**

22      50.    The Infringing Game was released to the public in or about October

23   2018.  At the time of its release, the Infringing Game was made available to be

24   played by any member of the public around the world through the InstantFuns

25   Websites.  Defendants also made the Infringing Game available to members of the

26   public via Android and/or Windows distribution platforms such as the Google Play

27   store and the Microsoft Store, and via an InstantFuns mobile "portal"

28   downloadable from the Google Play store.  Players can access and play the

Mitchell
Silberberg &
Knupp LLP

11628847.5

1   Infringing Game by using a web browser on a personal computer, by using an

2   Android emulator on a personal computer, or by using a mobile phone or other

3   portable device with an Internet connection.

4       51.     Blizzard is informed and believes, and on that basis alleges, that no

5   later than October 2018, Defendants began a marketing campaign for the

6   Infringing Game.  Defendants' marketing campaign included a dedicated website

7   and a dedicated Facebook page.  Defendants also entered into contracts with third-

8   party payment services such as Xsolla, SafeCharge, and Gate2Shop, in order to

9   enable customers around the world to spend money in connection with the

10  Infringing Game without paying Google or other distribution platforms.

11      52.     The Infringing Game is made available to the public on a "free-to-

12  play" basis.  Defendants do not charge users to play the Infringing Game.  Instead,

13  Defendants generate revenue by selling to their users (for actual currency) virtual

14  currency in the form of "Khorium" gems.  This virtual currency then can be used

15  to acquire or unlock new characters, character upgrades, weapons, and character

16  customizations such as clothing and armor.  Defendants sell "packs" of in-game

17  currency for amounts ranging from $1.99 for 237 Khorium to $399.99 for 15,999

18  Khorium.  Defendants' business thus relies on attracting a large body of users to

19  download their games, intending that some portion of those users will play the

20  game for a sustained period of time and spend money to unlock or acquire

21  additional content.  Users in the United States made regular purchases of Khorium

22  to acquire virtual items in the Infringing Game.

23      53.     In the Infringing Game, players take control of a computer-animated

24  hero or team of heroes assembled from a roster of characters.  Players then use

25  their hero to battle monsters and other antagonists across two-dimensional,

26  computer-generated locations.  As the player continues to play the Infringing

27  Game, he or she unlocks new heroes and skills; acquires new weapons, armor, or

28  magical trinkets; and gains the ability to visit new locations or "dungeons."

Mitchell
Silberberg &
Knupp LLP

21

54.    Blizzard is informed and believes, and on that basis alleges, that at all relevant times Defendants had access to the Warcraft Games and other licensed Warcraft products and were aware of their massive popularity throughout the world.  Without license or authorization from Blizzard, Defendants incorporated or copied into the Infringing Game and marketing materials for the Infringing Game (including Defendants' website and Facebook page) dozens, if not hundreds, of visual, audiovisual, musical, artistic, and other expressive elements that were directly copied from and/or substantially similar to, those contained or depicted in the Warcraft Games or the Warcraft Universe.

55.    Among the protected elements that Defendants appropriated from the Warcraft Games and the Warcraft Universe are visual depictions of Blizzard's characters, races, creatures, animals, and monsters; Blizzard's in-game artwork or concept artwork; Blizzard's in-game icon artwork; visual depictions of locations and landmarks which appear in Blizzard's games; and Blizzard's sound and/or music files.  In many instances, Defendants describe their in-game content using the same names, titles, or descriptions used by Blizzard in the Warcraft Games or the Warcraft Universe.  A few examples appear below:



"Event Boss" from
*Glorious Saga*



Illidan Stormrage from
*World of Warcraft*

Mitchell
Silberberg &
Knupp LLP

11628847.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Hellscream's Warsong
from *Glorious Saga*

Grommash Hellscream
from *World of Warcraft*





Malfurion from *Glorious Saga*

Malfurion from *Heroes of the Storm*

Mitchell Silberberg & Knupp LLP

11628847.5



| Gul'dan/Orc Warlock from *Glorious Saga* | Gul'dan from *World of Warcraft* |

56.     The foregoing is just a sampling of Defendants' infringement.  The full extent of Defendants' copying can be appreciated only by review of the Infringing Game and promotions for the Infringing Game posted on Defendants' websites and social media pages.  By way of example, and without limitation, Blizzard alleges that the similarities depicted in **Exhibit 1**, attached hereto and incorporated by reference herein, are additional representative samples of Defendants' pervasive infringement of the Warcraft Games.

57.     In addition to copying individual characters, creatures, races, and other protectable elements of the Warcraft Games, Defendants copied the overall selection and arrangement of such elements, including but not limited to the collection of characters, races, creatures, monsters, animals, spells, powers, weapons, vehicles, armor, amulets and magical trinkets that players encounter in the Warcraft Games, including specific sets of powers and traits that are unique to particular characters and races.

58.     Blizzard is informed and believes, and on that basis alleges, that Defendants' use of Blizzard's well-known and highly valuable intellectual property was willful and intentional.  Defendants designed and marketed their games with

the intention of capturing the attention of the tens of millions of consumers who are fans of the Warcraft Games. Because Defendants' "free-to-play" business model relies on attracting a large body of users to download their games, Defendants made a concerted decision to trade off Blizzard's intellectual property and to use it to entice potential customers to play the game. For example, Defendants embed on their website or social media pages "keywords" such as "World of Warcraft"; use a game icon and logo designed to look like *Warcraft* game box covers or key art; and regularly post promotional images that feature *Warcraft* characters. As a result, all or virtually all of the revenue received by Defendants is attributable to the infringement.

59.     Blizzard is informed and believes, and on that basis alleges, that Defendants also know that their game infringes Blizzard's copyrights and that their conduct is unlawful. Members of the public repeatedly have commented on the similarities between the Warcraft Games and the Infringing Game. As one gaming publication noted: "Players of World of Warcraft or Warcraft III will see lots of familiar aspects."[2] Likewise, visitors to Defendants' social media pages repeatedly have criticized Defendants for stealing Blizzard's intellectual property. For example, among recent posts to Defendants' Facebook page were the following

- "Wow. What a [expletive] nerve you have to blatantly steal the property of another company and claim it as your own."

- "Blizzard get your lawyers in here."

- "It is all a DIRECT ripoff of Warcraft... Warcraft is my favorite and here you are... STEALING IT."

- "I'm sure Blizzard would love to see this game!"

- "Wow, rip off World of Warcraft much??"

- "Gotta love all the World of Warcraft content ripoffs."

---

[2] https://mmohuts.com/game/glorious-saga/.

Mitchell Silberberg & Knupp LLP

11628847.5

60.     Blizzard is informed and believes, and on that basis alleges, that
Defendants' representatives have seen and read the comments and discussions
about the infringing nature of the Infringing Game, and from time to time delete
such comments from their social media.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement

(Against All Defendants)

61.     Blizzard realleges and incorporates by reference the allegations in
paragraphs 1 through 60, as if set forth fully herein.

62.     Blizzard is the owner of valid and registered copyrights in each of the
Warcraft Games.

63.     Defendants have infringed, and are continuing to infringe, Blizzard's
copyrights in the Warcraft Games by reproducing, adapting, distributing, publicly
performing, and publicly displaying, and knowingly authorizing others to
reproduce, adapt, distribute, publicly perform, and publicly display copyrighted
elements of the Warcraft Games without authorization, in violation of the
Copyright Act, 17 U.S.C. § 101 *et seq*.

64.     Blizzard has never authorized or given consent to Defendants to use
their copyrighted works in the manner complained of herein.

65.     Defendants' acts of infringement are willful, in disregard of, and with
indifference to Blizzard's rights.

66.     As a direct and proximate result of the infringements alleged herein,
Blizzard is entitled to damages and to Defendants' profits in amounts to be proven
at trial, which are not currently ascertainable. Alternatively, Blizzard is entitled to
maximum statutory damages of $150,000 for each copyright infringed, or in such
other amount as may be proper under 17 U.S.C. § 504(c).

Mitchell
Silberberg &
Knupp LLP

26

11628847.5

67. Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

68. As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury for which there is no adequate remedy at law. Blizzard is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in the Warcraft Games. Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## SECOND CLAIM FOR RELIEF

### Contributory Copyright Infringement

(Against All Defendants)

69. Blizzard realleges and incorporates by reference the allegations in paragraphs 1 through 68, as if set forth fully herein.

70. Blizzard is the owner of valid and registered copyrights in each of the Warcraft Games.

71. By developing the Infringing Game, making copies of the Infringing Game, and distributing the Infringing Game to the public, including by uploading it or causing it to be uploaded to digital platforms, one or more of Defendants engaged in acts of direct copyright infringement, including unauthorized reproduction, distribution, and adaptation of Blizzard's copyrighted works. In addition, players of the Infringing Game engaged in unauthorized acts of reproduction and public performance when they downloaded the Infringing Game, streamed it to their personal computers or mobile devices, and shared images of the Infringing Game on social media websites such as YouTube, Facebook, and

Mitchell Silberberg & Knupp LLP

11628847.5

Discord.  Blizzard has never authorized or given consent to the use of their copyrighted works in the manner complained of herein.

72.  Defendants materially contributed to one or more of the foregoing acts of infringement, with knowledge that they were facilitating, encouraging, or enabling copyright infringement.  For example, and without limitation, Defendants (1) instructed and/or directed others to create an English-language version of the Infringing Game; (2) provided necessary technical and financial support for the acts of infringement alleged herein; (3) advertised and publicized the Infringing Game, or assisted with such advertising and publicity; (4) hosted and maintained online remote servers that enabled the Infringing Game to be played by end-users; (5) provided or financed critical services to enable the creation, distribution, marketing, and sale of the Infringing Game.

73.  Defendants' acts of infringement were willful, in disregard of, and with indifference to Blizzard's rights.

74.  As a direct and proximate result of the infringements alleged herein, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

75.  Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

76.  As a result of Defendants' acts and conduct, Blizzard has sustained substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Blizzard's rights in the Warcraft Games.  Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

Mitchell
Silberberg &
Knupp LLP

11628847.5

28

## THIRD CLAIM FOR RELIEF

### Vicarious Copyright Infringement

(Against All Defendants)

77.     Plaintiffs incorporate by this reference each and every allegation contained in paragraphs 1 through 76, inclusive.

78.     Blizzard is the owner of valid and registered copyrights in each of the Warcraft Games.

79.     By developing the Infringing Game, making copies of the game, and distributing it to the public, including by uploading it or causing it to be uploaded to digital platforms, one or more of Defendants or their users engaged in acts of direct copyright infringement, including unauthorized reproduction, distribution, and adaptation of Blizzard's copyrighted works.  In addition, players of the Infringing Game engaged in unauthorized acts of reproduction and public performance when they downloaded the Infringing Game, streamed it to their personal computers or mobile devices, and shared images of the Infringing Game on social media websites such as YouTube, Facebook, and Discord.  Blizzard has never authorized or given consent to the use of their copyrighted works in the manner complained of herein.

80.     Defendants had the right and ability to supervise and control the infringing conduct.  By way of example, and without limitation, the Defendants controlled, supervised, oversaw, financed, and authorized the distribution, sale, marketing, advertising, maintenance, updating, servicing, and monetization of the Infringing Game.  Defendants also encouraged users to download the Infringing Game, to purchase in-game content, and to share the Infringing Game with friends. Defendants refused to exercise their supervision and control to stop or limit the infringement, even though they could easily have done so.

81.     Defendants have derived a direct financial benefit from the infringement, including in the form of sums paid by players of the Infringing Game or other related games to purchase in-game content.  The Infringing Game also acted as a draw to include players to visit the Instantfuns Websites and to download or play other similar games offered by Defendants.

82.     Blizzard has never authorized or given consent to the Defendants to use their copyrighted works in the manner complained of herein.

83.     Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

84.     As a direct and proximate result of the infringements alleged herein, Blizzard is entitled to damages and to Defendants' profits from the Infringing Game in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

85.     Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

86.     As a result of Defendants' acts and conduct, Blizzard has sustained substantial, immediate, and irreparable injury for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Warcraft Games.  Blizzard is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

# **PRAYER FOR RELIEF**

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, an Order:

1.      Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, licensees, Internet service providers, and all persons acting in concert or participation with them, or under their direction or control, from any of the following activities:

(a)      Distributing, reproducing, uploading, making available for download, displaying, exhibiting, publicly performing, communicating to the public, streaming, transmitting, or otherwise exploiting the Infringing Game or any other game that infringes Blizzard's copyrights;

(b)      Enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing, whether directly or indirectly, any user or other third party to distribute, reproduce, upload, make available for download, display, exhibit, publicly perform, communicate to the public, stream, transmit, or otherwise exploit the Infringing Game or any other game that infringes Blizzard's copyrights;

(c)      Using, operating, maintaining, distributing, or supporting any computer server, website, software, domain name, email address, social media account, bank account, or payment processing system in connection with distributing, reproducing, uploading, making available for download, displaying, exhibiting, publicly performing, communicating to the public, streaming, transmitting, or otherwise exploiting the Infringing Game or use or any other game that infringes Blizzard's copyrights;

(d)      Enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing, whether directly or indirectly, any user or other third

Mitchell
Silberberg &
Knupp LLP

11628847.5

party to visit any website, including but not limited to any website operated by Defendants, that hosts, links to, distributes, reproduces, copies, downloads, uploads, makes available for download, displays, exhibits, publicly performs, communicates to the public, streams, transmits, or otherwise exploits the Infringing Game or any other game that infringes Blizzard's copyrights;

(e)     Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in this Paragraph.

2.     Requiring Defendants, pursuant to 17 U.S.C. § 503, to deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights described herein, including but not limited to any copies of the Infringing Game and its source code and all servers, hard drives, or computers on which the Infringing Game is stored and maintained.

3.     Requiring Defendants or their service providers, including Facebook, Xsolla, and Yesup Ecommerce Solutions, Inc., to delete or remove all social media accounts and pages related to the Infringing Game and to immediately delete or remove all materials related to the Infringing Game from their servers.

4.     Requiring Defendants to provide Blizzard with an accounting of any and all revenue and profits derived from the Infringing Game.

5.     Requiring Defendants and their officers, servants, employees, agents and any persons who are, or on notice and upon continued provision of services would be, in active concert or participation with them, including but not limited to the domain name registrars and registries administering, holding, listing, or otherwise having control over the domain name Instantfuns.com, ZRoad.me, or any other domain name used in connection with Defendants' infringing activities (including but not limited to GoDaddy.com), to transfer such domain name to Blizzard's ownership and control, including, *inter alia,* by changing the registrar of record to the registrar of Blizzard's choosing, unless Blizzard requests that such domain name be held and/or released rather than transferred.

6.      Declaring that Defendants willfully infringed Blizzard's copyrights.

7.      Awarding Blizzard monetary relief including damages sustained by Blizzard in an amount not yet determined, including actual damages and/or Defendants' profits, or statutory damages for copyright infringement and willful copyright infringement, in an amount up to $150,000 per infringed work under 17 U.S.C. § 504, as appropriate.

8.      Awarding Blizzard its costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505, 17 U.S.C. 512(f), and other applicable laws.

9.      Awarding such other and further relief as this Court may deem just and appropriate.


DATED: November 7, 2019          MARC E. MAYER
                                 MARK C. HUMPHREY
                                 MITCHELL SILBERBERG & KNUPP LLP


                                 By:    /s/ Marc E. Mayer
                                        Marc E. Mayer
                                        Attorneys for Plaintiff
                                        Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

11628847.5

# DEMAND FOR JURY TRIAL

Plaintiff Blizzard Entertainment, Inc. ("Blizzard") hereby demands a trial by jury on all issues so triable.

DATED: November 7, 2019       MARC E. MAYER
                              MARK C. HUMPHREY
                              MITCHELL SILBERBERG & KNUPP LLP


                              By:  /s/ Marc E. Mayer
                                  Marc E. Mayer
                                  Attorneys for Plaintiff
                                  Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

34

11628847.5