## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-1582 JVS (DFMx)                    Date     February 7, 2020

Title        **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

Present: The Honorable          **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **[IN CHAMBERS] Order Regarding Motions to Dismiss and to Serve by Alternative Means**

Before the Court are four motions.

First, Defendant Zroad Hong Kong Co., Ltd. ("Zroad HK"), moved to dismiss Plaintiff Blizzard Entertainment, Inc.'s ("Blizzard's") First Amended Complaint ("FAC") for (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and (2) failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot., Dkt. No. 36. Blizzard opposed. Opp'n, Dkt. Nos. 45, 48. Zroad K replied. Reply, Dkt. Nos. 53, 56.

Second, Defendant Zroad Inc. moved to dismiss Blizzard's FAC for (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), (2) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and (3) failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot., Dkt. No. 37. Blizzard opposed. Opp'n, Dkt. Nos. 45, 48. Zroad Inc. replied. Reply, Dkt. Nos. 54, 55.

Third, Defendant Joyfun Inc. Co., Limited ("Joyfun") moved to dismiss Blizzard's FAC (1) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and (2) failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot., Dkt. No. 43-1. Blizzard opposed. Opp'n, Dkt. Nos. 46, 48. Joyfun replied. Reply, Dkt. Nos. 57, 62.

Fourth, Blizzard filed a motion to serve (1) Defendant Howell Wang, the "sole owner" of Zroad HK, and (2) Defendant Carly Zhou, the "sole owner" of ZRoad, Inc. by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

alternative means.  Mot., Dkt. No. 52.  The motion is unopposed.

For the following reasons, the Court **DENIES** Zroad HK's motion, **DENIES** Zroad Inc.'s motion, **GRANTS IN PART and DENIES IN PART** Joyfun's motion, and **GRANTS** Blizzard's motion.

## I. BACKGROUND

Blizzard asserts three causes of action for copyright infringement, contributory copyright infringement, and vicarious copyright infringement.  See generally, FAC, Dkt. No. 32.

Blizzard, which has its principal place of business in Irvine, California, is a developer and publisher of interactive video and computer games for personal computers, game consoles, and mobile devices.  Id. ¶ 8.  Among Blizzard's products are the games in the *Warcraft* game franchise (the "Warcraft Games), which include *Warcraft III, World of Warcraft* , and *Hearthstone*.  Id. ¶ 19.  Blizzard is the owner of valid and subsisting registered copyrights in each of the Warcraft Games.  Id. ¶ 23.

The Warcraft Games take place in the fictional universe of "Azeroth."  Id. ¶ 24.  Various distinct humanoid or anthropomorphic "races" populate the Warcraft Universe, as well as hundreds of different animal species, creatures, monsters, and other recognizable characters.  Id. ¶¶ 26-30.

Blizzard claims that the Defendants are infringing its intellectual property with their mobile and web-based game"Glorious Saga" (the "Infringing Game").  Id. ¶¶ 1-3, 33.  The Infringing Game was released to the public in or about October 2018.  Id. ¶ 50.  At the time of its release, the Infringing Game was made available to be played by any member of the public around the world through the InstantFuns Websites.  Id.  Defendants also made the Infringing Game available to members of the public via Android and/or Windows distribution platforms such as the Google Play store and the Microsoft Store, and via an InstantFuns mobile "portal" downloadable from the Google Play store.  Id.  The Infringing Game is made available to the public on a "free-to-play" basis; Defendants do not charge users to play the Infringing Game.  Id. ¶ 52.  Instead, Defendants generate revenue by selling to their users (for actual currency) virtual currency in the form of "Khorium" gems.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

The Infringing Game was marketed to the public as a product developed by or
originating from "Instantfuns" or "Instantfuns Game." Id. ¶ 33. However, there is no
registered corporate entity with the name "Instantfuns." Id. Rather, Blizzard alleges that
"Instantfuns" is a fictitious name used by several interrelated companies located or
incorporated in Hong Kong, the British Virgin Islands, and mainland China. Id.

According to Blizzard, Defendant Joyfun has provided support and assistance with
respect to the operation, development, marketing, promotion, and monetization of the
Infringing Game. Id. ¶¶ 9, 42-45. Defendant Zroad HK claims to be the current owner of
exclusive rights, including copyrights, in the Infringing Game and in various websites
pursuant to which the Infringing Game was marketed and offered to the public. Id. ¶¶ 10,
36, 37. Defendants Zroad HK and Joyfun are Hong Kong companies owned or
controlled by Defendant Howell Wang ("Wang"). Id. ¶¶ 9-10, 15. The two entities share
owners, officers, founders, addresses, phone numbers, employees, credit cards, IP
addresses, Internet service providers, and domain name servers. Id. ¶ 47.

Zroad Inc., which is incorporated under the laws of the British Virgin Islands, is a
subsidiary or affiliate of Zroad HK and Joyfun. Id. ¶ 12. Zroad Inc. purports to own
domain names and copyrights related to the Infringing Game. Id. ¶ 37.

Blizzard alleges that Defendants collectively are responsible for the creation,
distribution, marketing, and monetization of the Infringing Game in the United States.
Id. ¶ 34.

## II. LEGAL STANDARD

### A.    Fed R. Civ. Proc. 12(b)(1)

Dismissal is proper when a plaintiff fails to properly plead subject matter
jurisdiction in the complaint. Fed. R. Civ. P. 12(b)(1). A "jurisdictional attack may be
facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).
If the challenge is based solely upon the allegations in the complaint (a "facial attack"),
the court generally presumes the allegations in the complaint are true. Id.; Warren v. Fox
Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). If instead the challenge
disputes the truth of the allegations that would otherwise invoke federal jurisdiction, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |

| | |
|---|---|
| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |

challenger has raised a "factual attack," and the court may review evidence beyond the confines of the complaint without assuming the truth of the plaintiff's allegations. Safe Air, 373 F.3d at 1039. The plaintiff bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

If, however, the question of jurisdiction is intertwined with factual issues going to the merits, the court should not resolve genuinely disputed facts, and require the movant to establish that there are no material facts in dispute and that the movant is entitled to prevail as a matter of law. Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

Pursuant to Article III of the Constitution, the Court's jurisdiction over the case "depends on the existence of a 'case or controversy.'" GTE Cal., Inc. v. FCC, 39 F.3d 940, 945 (9th Cir. 1994). A "case or controversy" exists only if a plaintiff has standing to bring the claim. Nelson v. NASA, 530 F.3d 865, 873 (9th Cir. 2008), rev'd on other grounds, 131 S. Ct. 746 (2011). To have standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Nelson, 530 F.3d at 873.

**B.     Fed R. Civ. Proc. 12(b)(2)**

Before trial, nonresident defendants may move to dismiss the case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Pennoyer v. Neff, 95 U.S. 714, 720 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 206 (1977). The contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient "contacts, ties, or relations" between the defendant and the forum state before "mak[ing] binding a judgment *in personam* against an individual or corporate defendant." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Due Process requires that "there exist 'minimum contacts' between the defendant and the forum" in order to protect the defendant "against the burdens of litigating in a distant or inconvenient" court and lend "a degree of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                Date    February 7, 2020

Title          **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

predictability to the legal system." <u>World-Wide</u> <u>Volkswagen</u>, 444 U.S. at 291, 292, 297.

Jurisdiction must also comport with law of the forum state. <u>See</u> Fed. R. Civ. P. 4(k)(1)(A); <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because California's long-arm statute allows the exercise of jurisdiction on any basis consistent with the state and federal constitutions, the jurisdictional analyses of state law and federal due process are the same. Cal. Code. Civ. Proc. § 410.10; <u>see also</u> <u>Yahoo!</u>, 433 F.3d at 1205.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004). Plaintiff's allegations of jurisdictional facts must also be supported by competent proof. <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 96-97 (2010). In the absence of an evidentiary hearing, "[h]owever, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001)). To make the requisite showing, a plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." <u>Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotation marks and citation omitted). In evaluating the plaintiff's showing, all uncontroverted allegations in the complaint are taken as true and all disputed facts are resolved in plaintiff's favor. <u>Id.</u>; <u>Schwarzenegger</u>, 374 F.3d at 800. If defendants adduce evidence controverting the allegations, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir. 1986)).

Personal jurisdiction may be premised on general personal jurisdiction (based on a defendant's continuous presence in a state) or specific personal jurisdiction (based on specific contacts with the state specifically related to the claims at issue). The parties appear to be in agreement that general jurisdiction is not at issue in this case. Thus, the issue is whether Defendants, who are not citizens of California, can be subject to personal jurisdiction in California based on their contacts with the forum state.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title    **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

## 1.    Specific Personal Jurisdiction

A defendant is subject to specific jurisdiction "if the controversy [is] sufficiently related to or arose out of [the defendant's] contacts with the forum state." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).  The Ninth Circuit employs a three-part test to determine whether a court possesses specific jurisdiction over a particular defendant:  (1) the defendant must have "performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum"; (2) the claim must "arise[] out of or result[] from the defendant's forum-related activities"; and (3) the exercise of jurisdiction must be reasonable.  Pebble Beach, 453 F.3d at 1155.

The plaintiff bears the burden on the first two prongs.  Schwarzenegger, 374 F.3d at 802.  If the plaintiff fails to satisfy either prong, "jurisdiction in the forum would deprive the defendant of due process of law."  See Omeluk, 52 F.3d at 270.  "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

The first requirement for specific jurisdiction is purposeful availment. Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).  A defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party of a third person.  Id. at 475.  A defendant must act in a way that purposefully avails himself to the privilege of conducting activities within the forum state.  Id.  A defendant does not need to physically enter into the forum state to be subject to jurisdiction, "so long as a commercial actor's efforts are purposefully directed toward residents of another state."  Id. at 476 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S., 770, 774–75).

The second requirement for specific jurisdiction is that the claim must arise out of a defendant's forum related activities. For this factor, courts use a traditional "but for" causation test.  Bancroft, 223 F.3d at 1088. The contacts constituting purposeful availment must be the ones that give rise to the current suit.  Id.  The analysis is such that, but for the contacts between a defendant and the forum state, the claim would not have arisen.  Ziegler v. Indian River Cty., 64 F.3d 470, 474 (9th Cir. 1995).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-1582 JVS (DFMx)                    Date     February 7, 2020

Title          **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

Even if the first two prongs are satisfied, an unreasonable exercise of jurisdiction violates the Due Process Clause. Id. at 474–75. Courts consider seven factors in evaluating whether the exercise of jurisdiction is unreasonable:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002). All seven factors must be weighed. Id. None of the factors is dispositive. Id.

**C.     Fed R. Civ. Proc. 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

**D.     Fed R. Civ. Proc. 4(f)(3)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)              Date    February 7, 2020

Title    **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

---

Fed. R. Civ. P. 4(f)(3) permits service in a place not within any judicial district of the United States "by other means not prohibited by international agreement, as the court orders." Service under Rule 4(f)(3) must be directed by the Court and not prohibited by international agreement. Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1014 (9th Cir.2002). Courts have authorized a variety of alternative means of service, including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and email. Id. at 1015. The court-directed method of service of process must "comport with constitutional notions of due process," which requires that the method be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 1016.

### III. DISCUSSION

**A.    Zroad HK's Motion to Dismiss**

**1.    Specific Jurisdiction**

The Court concludes that it has personal jurisdiction over Zroad HK regarding this action because the requirements for specific jurisdiction have been met.

First, the relevant forum is the entire United States, not merely California. See Blizzard Entm't, Inc. v. Bossland GmbH, 2017 WL 412262, at *4 (C.D. Cal. Jan. 25, 2017).[1]

Rule 4(k)(2) provides that:

For a claim that arises under federal law, serving a summons ... establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

---

[1] At the hearing, Joyfun attempted to distinguish this case, arguing that the defendant's contacts were more extensive than its contacts with the United States here. It did not address this case in its Motion or Reply. Either way, the Court believes that the contacts in this case are sufficiently comparable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

Courts in the Ninth Circuit use a three-part analysis to assess whether jurisdiction is proper under Rule 4(k)(2). "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1159 (9th Cir. 2006) (internal citations omitted). Blizzard has alleged claims under federal copyright law, so the first part of the test is met. As for the second requirement, it is Joyfun's burden to establish that another state would have jurisdiction, but it has not done so. Accordingly, the second requirement is also met. The third requirement of the Rule 4(k)(2) analysis is the same as the Ninth Circuit's test for specific jurisdiction, except that instead of looking at the defendant's contact with the forum state, the Court must consider contacts with the nation as a whole. Therefore, the Court will proceed to evaluate if specific jurisdiction over Joyfun is appropriate, considering the United States as the relevant forum.

### a.    Purposeful Availment

This test requires Blizzard to establish that Zroad HK "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Axion Foods, Inc. V. Acerchem International, Inc., 874 F.3d 1064, 1069 (9th Cir. 2017).

The Ninth Circuit has developed a framework for analyzing whether a defendant's maintenance of a website constitutes purposeful availment towards a forum state. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997). A passive website, which establishes a "mere web presence," does not establish jurisdiction by itself. Holland, 485 F.3d at 460; Cybersell, 130 F.3d 414 at 417-418 (discussing Bensusan Rest. Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996), aff'd 126 F.3d 25 (2d Cir. 1997) (general access web page that did not sell concert tickets but rather directed browsers to names and addresses of ticket sellers did not provide minimum contacts with forum state)).

On the other hand, an "interactive" website may provide sufficient contacts depending on the "level of interactivity and commercial nature of the exchange of information" that occurs on the website. Cybersell, 130 F.3d at 418. "If a website falls somewhere between passive and interactive, 'the likelihood that personal jurisdiction can

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title          **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

be constitutionally exercised is directly proportionate to the nature and quality of
commercial activity that an entity conducts over the internet.'" Quigley v. Guvera IP Pty
Ltd., 2010 WL 5300867 (N.D. Cal. 2010) (finding website interactive and commercial
when it required users to register in order to download free music because registration
information was used to generate targeted advertising revenue; quoting Cybersell, 130
F.3d at 418).  Internet advertisement alone is insufficient to subject the advertiser to
jurisdiction in the plaintiff's home state; rather, "something more" is needed "to indicate
that the defendant purposefully (albeit electronically) directed his activity in a substantial
way to the forum state." Id.

        Zroad HK argues that it did not purposefully avail itself of the privilege of
conducting activities in California and that Blizzard has not alleged it "specifically
exploited the California or United States market for commercial gain." Mot., Dkt. No. 36
at 12.  Zroad HK contends that it did not create a special version of the game for the U.S.
or California market, conduct a "special advertising campaign" aimed toward California,
nor does it derive a high percentage of revenue from the state. Id. Indeed, Zroad HK
notes that it has no offices or personnel in California. Id. Accordingly, Zroad HK argues
that the first prong of the specific personal jurisdiction test is not satisfied.

        The Court disagrees.  The Court finds that Zroad HK purposefully availed itself of
the privilege of conducting business in the United States by distributing the Infringing
Game on platforms such as the Google Play store and Microsoft App store, selling virtual
currency to American customers, and advertising the Infringing Game via platforms like
Facebook. See FAC ¶ 6; Goes Int'l, AB v. Dodur Ltd., 2015 WL 5043296, at *9 (N.D.
Cal. Aug. 26, 2015). ("[D]efendants' acts of distributing infringing games to U.S.
consumers and generating revenue (and diverting customers from Goes's games) are acts
'expressly aimed' at the U.S.").  Zroad HK has done more than merely distribute a game
for a worldwide audience or advertise to U.S. customers.  Blizzard persuasively
demonstrates that Zroad HK, along with the other Defendants, targets American players,
intentionally.  Opp'n at 13-17.  Blizzard notes the following:

        Server maintenance was scheduled at times that would cause minimum disruption to
        U.S. players, and were referred to using "US EDT."  Declaration of James Berkley
        ("Berkley Decl."), Dkt. No. 48-2, Exs. 3, 53. In-game "events" or promotions were
        designed to coincide with U.S. holidays such as Labor Day and St. Patrick's Day. Id.,
        Exs. 3, 17.  In-game currency prices were listed in U.S. dollars.  FAC ¶ 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title        **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

Additionally, customer chat rooms and support forums were in English. Berkley Decl. ¶¶ 64-69, 79-82 & Exs. 52-56, 64-66 . . . Defendants communicated with players using California-based Discord, which is a platform through which individuals can participate in public or private text or voice chats. Id. ¶¶ 79-83 & Exs. 64-67.

Opp'n at 7-10. The Court is satisfied that Zroad HK's activities were "intentional act[s]" that were "expressly aimed" at U.S. customers. See Adobe Sys. Inc. v. Blue Source Group, Inc., 125 F. Supp. 3d 945, 960-61 (N.D. Cal. 2015) ("the Ninth Circuit has held that specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state."). Blizzard alleges that the Defendants, including Zroad HK, included the words "Warcraft" and "Blizzard" in their website html code. FAC ¶¶ 2-3, 54-58.

In its Reply, Zroad HK argues that Blizzard improperly collapses all of the Defendants together for the specific jurisdiction analysis. Reply at 5-6, 10. However, Blizzard alleges that Zroad HK worked together with Joyfun and Zroad Inc. to distribute, market, advertise, and support the Infringing Game in the United States. FAC ¶¶ 32-39. Blizzard has alleged sufficient evidence, at this stage in the proceedings, for the Court to consider the Zroad HK, Zroad Inc., and Joyfun entities "alter egos" of each other. Id. ¶¶ 35-49

### b.    Arising Out of or Resulting From Forum-Related Activities

Zroad HK objects to the argument that the suit arises out of or results from its forum-related activities in the U.S., contending that Blizzard has not alleged that Zroad HK, on its own, initiated contacts with the U.S. Mot. at 13. It argues that it "can access and use [Google Play, Facebook, and the Microsoft store] all over the world without ever having stepped foot in California or the US." Id.

But players in the U.S. would not have downloaded and played the Infringing Game *but for* Zroad HK's role in the distribution and marketing of the Infringing Game to users within the United States. In AMA Multimedia LLC v. Sagan Ltd., 2016 WL 5946051, at *5-6 (D. Ariz. Oct. 13, 2016), for example, the court reasoned that the Rule 4(k)(2) "but for" test was satisfied because:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                Date    February 7, 2020

Title        **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

the "[defendant's website] anticipated, desired and achieved a substantial [United States] viewer base with the intent of commercial gain.… [The website's] alleged infringement of [plaintiff's] copyrighted works would serve only to further the purpose of growing the United States viewership for commercial gain. What is more, [defendant's website] specifically targeted [plaintiff's] content, knowing [plaintiff] was a United States company protected by United States copyright laws, and proceeded to post that content in the United States, where [plaintiff] is attempting to make business use of its copyrighted material."

Accordingly, the Court finds that this prong of the jurisdictional analysis is satisfied.

### c.    Reasonability

Zroad HK argues that Blizzard "has failed to allege any facts showing that [it] purposefully injected themselves in the affairs of California or the US in connection with the alleged infringement." Mot. at 14. Further, it argues that it would be burdened by litigating in a foreign jurisdiction, given that it is incorporated and has its principal place of business in Hong Kong. Id. at 15-17. California, it argues, would be an "inconvenient location," since "all alleged wrongful acts and witnesses would be overseas." Id. at 16-17.

The Court finds that Zroad HK has failed to present "a compelling case" that the exercise of jurisdiction would be unreasonable. See Schwarzenegger, 374 F.3d at 802. Zroad HK's argument that Hong Kong may be a more reasonable forum is not enough; Zroad HK has not shown that having this action heard in California "would make the litigation *so gravely difficult and inconvenient* that a party unfairly is at a severe disadvantage in comparison to [its] opponent." Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir.1990) (quoting Burger King Corp. 471 U.S. at 478) (emphasis added). The Court has already addressed Zroad HK's argument regarding purposeful injection above. And Zroad HK's nonspecific objections regarding inconvenience are insufficient to show that jurisdiction is unreasonable. Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 748 (C.D. Cal. 1995) ("[I]n almost any case where the defendant does not reside in the forum state, some additional inconvenience is inevitable.").

In sum, the Court **denies** dismissal of the FAC based on lack of personal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

jurisdiction over Zroad HK.

### 2.  Failure to State a Claim

Zroad HK makes two main arguments in its motion.  First, it argues that Blizzard has failed "to specify exactly what actions, if any, were carried out by" it, specifically, as opposed to the other Defendants.  Mot., Dkt. No. 36 at 18.  Zroad HK suggests that Blizzard is "unable to specify which Defendant did which wrongful action."  Reply, Dkt. No. 56 at 4.  Second, Zroad HK contends that Blizzard "makes no allegations as to what serious and irreparable harm" it has suffered.  Mot. at 18.

The Court finds that Blizzard's FAC sufficiently alleges infringing behavior by Zroad HK.  Blizzard claims that Zroad HK is the U.S. publisher of the Infringing Game and is responsible for the creation, marketing, advertising, distribution, and servicing of the Infringing Game in the United States.  FAC ¶¶ 10, 36, 37.  Blizzard alleged that Zroad HK created the English-language version of the Infringing Game; uploaded the Infringing Game to Google servers for further distribution to members of the public; engaged in extensive advertising and promotion of the Infringing Game; and provided customer and technical support services.  Id. ¶ 36.  And Blizzard adequately alleges that Zroad HK, along with the other Defendants, maintains common ownership and control over the Infringing Game.  Id. ¶¶ 38-39.  Contrary to Zroad HK's assertion, Blizzard is not required to plead "specific damages" for copyright infringement at this stage.  See Martin Family Trust v. Christian Research Institute, Inc., 2010 WL 11597956, at *3 (C.D. Cal. Nov. 16, 2010) ("The FAC, however, alleges that infringement took place when the [defendants] uploaded the copyrighted material onto the Internet . . . Plaintiffs ask for declaratory relief, actual damages, and attorneys' fees. There is no heightened pleading standard for copyright infringement.").

Accordingly, the Court **denies** Zroad HK's motion to dismiss.

## B.  Zroad Inc.'s Motion to Dismiss

### 1.  Specific Jurisdiction

The Court concludes that it has personal jurisdiction over Zroad Inc. regarding this action because the requirements for specific jurisdiction have been met.  The same legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title       **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

standards apply as those articulated in discussing Zroad HK's motion to dismiss on personal jurisdiction grounds.

### a.    Purposeful Availment

Zroad Inc. argues that there are "no factual allegations showing that [it] specifically exploited the California or United States market for commercial gain, nor could it since [it] is a shell corporation without employees or offices."  Mot., Dkt. No. 37 at 12.  Zroad Inc. Adds that the Infringing Game "was available in most countries around the world," Blizzard "made no allegation as to whether [it] advertised or marketed the alleged infringing game expressly aiming at California or the US" or that it "created a special website or version of the game that was catered to the California or US market."  Id. Therefore, Zroad Inc argues that the FAC does not satisfy this first prong of the jurisdictional analysis.

But Blizzard alleges that Zroad Inc. "exists in whole or in part to obscure the actual parties responsible for the Infringing Game" and purports "to be among the owners or prior owners of the copyright in the Infringing Game and related Internet websites.  FAC ¶ 12.  Blizzard claims that along with Zroad HK, Zroad Inc.:

> created or oversaw the creation of the final form of the English-language Infringing Game; created and maintained portions of the websites dedicated to the Infringing Game, such as Instantfuns.com and Zroad.me (collectively, the "InstantFuns Websites"); entered into agreements with Google and Microsoft for the distribution of the Infringing Game on the Google Play and Microsoft Stores in the United States, entered into agreements with XSolla and similar third-party platforms for payment services for the Infringing Game (including for payments from United States players); uploaded the Infringing Game app to Google servers for further distribution to members of the public; and engaged in extensive advertising and promotion for the Infringing Game in the United States and other English-speaking countries. The ZRoad Defendants also engaged in ongoing customer and technical support (including to customers in the United States) through social media platforms, including by regularly posting to U.S.-based websites such as Facebook and Twitter and by setting up and participating in "chat rooms" on the U.S.-based social media platform "Discord."

Id. ¶ 36.  These allegations are sufficient to make out a prima facie case that Zroad Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al |
|---|---|

"expressly aimed" its distribution and marketing of the Infringing Game towards the
United States; i.e., has purposefully directed its activities at this forum.  And, the Court is
satisfied that Blizzard has sufficiently alleged at this stage that Zroad Inc. is an "alter ego"
of the other Defendants.  See Opp'n, dkt. No. 48 at 19-21.  Indeed, Zroad Inc. was the
registered owner of the Instantfuns.com domain name from February 2018 to August 2019
and purported to own the copyright in the Instantfuns Website.  Berkley Decl., Dkt. No.
48-2, Ex. 38.

### b.    Arising Out of or Resulting From U.S. Activities

The same reasoning applied to Zroad HK's motion applies here: customers in the
United States would not have downloaded and played the Infringing Game *but for* Zroad
Inc.'s role in the distribution and marketing of the Infringing Game to users within the
country.  The fact that Zroad Inc. is incorporated in the British Virgin Islands and has no
offices or employees does not negate the connection between this entity and the other
defendants. The Court finds that this prong of the jurisdictional analysis is also met.

### c.    Reasonability

Zroad Inc. has failed to show that any of the relevant factors present a "compelling
case" for why exercising jurisdiction would be unreasonable.  Instead of meeting its
burden, as it must under this prong, Zroad Inc. argues that Blizzard has failed to allege
facts to meet a burden that it does not have here.  See Mot. at 13-16.  Therefore, the Court
finds that it has personal jurisdiction over Zroad Inc. in this action and **denies** dismissal on
this basis.

### 2.    Subject Matter Jurisdiction

Zroad Inc. argues that all three standing factors demonstrate that the Court does not
have subject matter jurisdiction over it in this action.  First, Zroad Inc. contends that
Blizzard has not alleged it suffered "injury in fact" because the Infringing Game "has not
been active for some time," and because Blizzard "has made no allegation as to any
monies lost directly related to the sale and distribution of the alleged infringing game or
any decline in sales or players which can be directly related to the sale and distribution of
the alleged infringing game."  Mot., Dkt. No. 37 at 18.  Second, Zroad Inc. contends that
Blizzard cannot show any injury is traceable to it, because it is a shell corporation without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

employees or offices.  Id. at 19.  Finally, it asserts that the alleged injury would not be redressed by a favorable decision because "[a] favorable decision by this Court against Zroad Inc. would bear no effect on the parties who indeed are responsible for the injury of [Blizzard]."  Id. at 20.

The Court is not persuaded by these arguments, which are not supported by pertinent case law.  Blizzard has adequately alleged an injury in fact with its infringement allegations. The suggestion that the Infringing Game is no longer in operation does not mean there is no longer an injury to be redressed.  The alleged injury may be traced to Zroad Inc., as Blizzard alleges that it engaged in acts of infringement by developing, promoting, and supporting the Infringing Game and that it worked in concert with other Defendants to obfuscate the Game's origins. FAC ¶¶ 36, 39.   Blizzard also alleges that Zroad Inc. received revenue in connection with the Infringing Game.  Id. ¶¶ 52, 58. Finally, Blizzard's injury may be redressed by a favorable court decision, including in the form of statutory and actual damages, disgorgement of profits, injunctive relief, and impoundment.  See 17 U.S.C. §§ 502, 504.

The Court concludes that Blizzard has standing to pursue this action against Zroad Inc., and **denies** the latter's motion to dismiss on this ground**.**

**3.     Failure to State a Claim**

Zroad Inc. argues that Blizzard has failed to plead, with specificity, what actions were carried out by Zroad Inc. and that Blizzard has inadequately alleged harm it has suffered.  Mot. at 21-22.

The Court finds that Blizzard's FAC sufficiently alleges infringing behavior by Zroad Inc.  Blizzard claims that Zroad "has at various times purported to own or control the Infringing Game and the InstantFuns Websites."  FAC ¶ 37.  Zroad Inc. also allegedly "is a developer, distributor, and/or publisher of the Infringing Game" and "exists in whole or in part to obscure the actual parties responsible for the Infringing Game."  Id. ¶ 12. And Blizzard adequately alleges that Zroad Inc., along with the other Defendants, maintains common ownership and control over the Infringing Game.  Id. ¶¶ 38-39. Contrary to Zroad Inc.'s assertion, Blizzard is not required to plead "specific damages" for copyright infringement at this stage, as the Court noted above in discussing Zroad HK's motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title        **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

Accordingly, the Court **denies** Zroad Inc.'s motion to dismiss.

**C.    Joyfun's Motion to Dismiss**

**1.    Personal Jurisdiction**

The Court concludes that it has personal jurisdiction over Joyfun in this action because the requirements for specific jurisdiction have been met.[2] The same legal standards apply as those articulated above in discussing Zroad HK's and Zroad Inc.'s motions to dismiss on personal jurisdiction grounds.

As a general matter, Joyfun objects that Blizzard's allegations made collectively against it, Zroad Inc. and Zroad HK cannot establish jurisdiction over Joyfun. This is correct: "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). And Joyfun argues that Blizzard cannot rely on an alter ego theory to establish jurisdiction because Blizzard has not plead enough facts to pierce the corporate veil. Mot. at 15-17. "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." Ranza v. Nike, Inc. 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and citations omitted).

As discussed below, the Court does not evaluate whether it has jurisdiction over Joyfun based upon an alter ego theory because it believes that Blizzard has adequately alleged that Joyfun had enough individual contacts with the forum.

**a.    Purposeful Availment**

Joyfun argues that Blizzard has failed to show that it specifically targeted California with its allegedly infringing acts and that Joyfun's acts "caused harm [it] knows is likely

---

[2] Although Joyfun's motion discusses general jurisdiction (see Mot., Dkt. No. 43-1 at 5-6), Blizzard "does not claim that Defendants are subject to general jurisdiction in the United States." Opp'n, Dkt. No. 48 at 11. Accordingly, the Court only considers the parties dispute regarding specific jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title    **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

---

to be suffered in the forum state." Mot., Dkt. No. 43-1 at 7-11; <u>Mavrix</u> <u>Photo,</u> <u>Inc.</u> <u>v.</u>
<u>Brand</u> <u>Techs.,</u> <u>Inc.</u>, 647 F.3d 1218, 1231 (9th Cir. 2011).

   The Court finds that Blizzard has sufficiently alleged Joyfun engaged in
"intentional acts" that were "expressly aimed" at the United States. <u>See</u> <u>Axiom</u> <u>Foods,</u>
874 F.3d at 1068–69. As discussed above, the relevant analysis is whether Joyfun
purposefully availed itself of the privilege of conducting activities in *the United States*,
not merely California, as Blizzard's claims are asserted under federal law. Joyfun argues
that "[t]here is no basis to find Rule 4(k)(2) jurisdiction here because Blizzard's complaint
does not meaningfully distinguish between Joyfun's contacts with California and with the
United States." Mot. at 15. It spends much of its motion disputing that its activities were
aimed at California, specifically, and cites <u>Werner</u> <u>v.</u> <u>Dowlatsingh</u>, 2018 WL 6975142, at
*7–8 (C.D.Cal. Sept. 17, 2018) for this argument. There, the court found that there was
no purposeful direction to the United States where the defendant's "aggregate contacts
with the United States are not meaningfully different from his contacts with California."
<u>Id</u>. But that case is distinguishable; the plaintiff had thinly supported allegations
regarding the defendant's contacts with California and the rest of the United States. Here,
by contrast, Blizzard has significantly more allegations regarding Joyfun's activities
expressly aimed at the United States.

   Blizzard alleges that Joyfun worked with Zroad Inc. and Zroad HK to distribute,
market, advertise, support and exploit the Infringing Game in the United States. FAC ¶¶
32-34, 38. <u>See</u> <u>Michael</u> <u>Grecco</u> <u>Prods.,</u> <u>Inc.</u> <u>v.</u> <u>Netease,</u> <u>Inc.</u>, 2019 WL 3245872, at *1
(N.D. Cal. July 3, 2019) (personal jurisdiction where "[t]he Complaint alleges that [the
corporate parent and subsidiary] worked together to curate American content that,
allegedly, included [plaintiff's] works.") Defendants made the Infringing Game available
to U.S. users via two Instantfuns Websites, which were in English and displayed an
American flag. Berkley Decl. ¶¶ 3-4 & Exs. 1-2, 57.

   Blizzard's allegations not only consider collective actions, but also specific
allegations of infringing conduct by Joyfun. Joyfun's "operations and affairs are
substantially intermingled with the ZRoad Defendants," and Joyfun allegedly "provided
material assistance to these Defendants in connection with their development, operation,
distribution, monetization, and exploitation of the Infringing Game in the United States."
FAC ¶ 43. Blizzard gives the example that "JoyFun's representatives, using Joyfun.com
email addresses, issued press releases, tweets, and other online messages promoting the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |

| | |
|---|---|
| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |

Infringing Game and other games published by 'Instantfuns,'" and "[i]n some of those promotional materials, JoyFun purports to be located in the United States." Id.

Further, Blizzard alleges that Joyfun "directed the creation of, and provided the ZRoad Defendants . . . with software that was integrated into the Infringing Game, known as the JoyFun SDK," and that "among other functions the JoyFun SDK enabled the Infringing Game to be monetized in the United States through XSolla and other payment platforms, and to be advertised in the United States through various platforms." Id. ¶ 44. Finally, Blizzard alleges that "JoyFun provided the ZRoad . . . Defendants with a variety of other services and facilities necessary to promoting and operating the Infringing Game, such as Internet hosting services, telephone services, customer support services, credit card and financial services, and domain name and email services." Id. ¶ 45. And "JoyFun, including but not limited to through its co-owner and CEO Wang, knew or had reason to know that the Infringing Game was being distributed in the United States and was infringing Blizzard's copyrights." Id. Blizzard also alleges that Joyfun and the other Defendants targeted U.S. customers by facilitating their ability to create an Instantfuns account, assent to its Terms of Service, and purchase in-game currency. Id. ¶ 52. In addition, Blizzard claims that Joyfun representatives advertised and promoted the Infringing Game through press releases that announced its location as the "United State[s]" and contained links to websites where U.S. users could play or download the Infringing Game. Id. ¶ 43. And, Joyfun representatives created and oversaw the Discord channel through which its representatives communicated directly with U.S. players. Berkley Decl. ¶¶ 79-83, Exs. 64-67. These forms of support facilitated the distribution and monetization of the Infringing Game.

The Court views distribution of the Infringing Game to consumers and generating revenue from this distribution as intentional acts expressly aimed at the forum (the United States). And, Blizzard adequately alleges that Joyfun knew these acts would cause harm. Accordingly, the purposeful availment prong of the specific jurisdiction test is satisfied here.

### b.    Arising Out of or Resulting From U.S. Activities

Joyfun argues that "[n]one of Blizzard's claims arise from Joyfun's alleged acts—online statements about Glorious Saga or other games, writing non-infringing code embedded in Glorious Saga, and providing basic 'services and facilities' like Internet

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

hosting." Mot. at 12. However, these acts allegedly facilitated the distribution and monetization of the Infringing Game. But for Joyfun's conduct, directed at the United States, Blizzard would not have been injured. Therefore this prong of the specific jurisdiction analysis is also met.

### c.    Reasonability

Joyfun contends that the first three factors involved in assessing the reasonability of exercising jurisdiction – extend of purposeful interjection, the burden of defending itself here, and conflict with foreign sovereignty – "weigh heavily" against doing so. See Mot. at 13; Rio Properties, Inc, 284 F.3d at 1021. But the next three factors – the United States' interest in adjudicating the dispute, the most efficient judicial resolution of the action, and the importance of the forum to Blizzard's interest in convenient and effective relief – are, according to Joyfun, "more neutral." Mot. at 14.

The Court has already found that Joyfun purposefully injected itself in the forum via its various forms of support for the operation and monetization of the Infringing Game. And the Court is not convinced that Joyfun would be unduly burdened by an action in this Court, or that the other factors strongly weigh against exercising jurisdiction. Accordingly, Joyfun has failed to present a "compelling case" for why exercising jurisdiction would be unreasonable.

### 2.    Failure to State a Claim

Joyfun also moves to dismiss Blizzard's FAC pursuant to Rule 12(b)(6). Mot. at 18-23.

### a.    Direct Infringement

First, Joyfun argues that Blizzard fails to state a claim for direct infringement because this claim requires showing that "that the defendant himself violated one or more of the plaintiff's exclusive rights." Id. at 18; Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). Joyfun contends that the FAC does not assert "facts supporting the conclusion that Joyfun *itself* unlawfully infringed elements of the Warcraft works," as opposed to the other defendants. Id

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |

| | |
|---|---|
| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |

Construing the pleadings in the light most favorable to Blizzard, the Court finds that it has stated a claim for direct infringement.  Blizzard alleges the wrongful conduct in which Joyfun engaged, including that JoyFun advertised and promoted the Infringing Game (FAC ¶ 43), facilitated the monetization of the Game (id. ¶ 44), provided software that enabled the Infringing Game to connect to online servers (id.), and provided Internet hosting services, telephone services, customer support services, credit card and financial services, and domain name and email services.  Id. ¶ 45.  Blizzard alleges that Joyfun, including but not limited to through the actions of its co-owner and CEO Wang, knew or had reason to know that the Game was infringing Blizzard's copyrights, in the United States.  Id.  Blizzard's allegations "provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them," including "what conduct is at issue," and "identify what action each Defendant took that caused [Blizzard's] harm."  See Adobe Systems Incorporated v. Blue Source Group, Inc., 125 F. Supp. 3d 945, 964-65 (N.D. Cal. 2015).

Accordingly, the Court **denies** dismissal of Blizzard's direct infringement claim.

### b.    Contributory Infringement

Next, Joyfun argues that Blizzard fails to plead contributory infringement.  Id. at 18-20.  This cause of action requires Blizzard to show that Joyfun knew (or had reason to know) of the infringing activities, and that it induced or materially contributed to them.  Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 795 (9th Cir. 2007).  In the Internet context, the Ninth Circuit has found contributory liability when the defendant "engages in personal conduct that encourages or assists the infringement.'"  A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1019 (9th Cir. 2001).  Where a defendant has knowledge of the primary infringer's infringing activities, it will be liable if it "induces, causes or materially contributes to the infringing conduct of" the primary infringer," and "[s]uch participation must be substantial."  Religious Tech. Ctr. v. Netcom On- Line Commc'n Servs., Inc., 907 F. Supp. 1361, 1375 (9th Cir. 1995)

First, Joyfun argues that Blizzard's allegations are conclusory regarding knowledge.  Mot. at 19; see FAC ¶ 45 ("At all relevant times, JoyFun, including but not limited to through its co-owner and CEO Wang, *knew or had reason to know* that the Infringing Game was being distributed in the United States and was infringing Blizzard's copyrights.").  The Court disagrees.  Contrary to Joyfun's argument (see Mot. at 19), the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

knowledge requirement may be met without the defendant having been notified through a cease-and-desist letter.  See, e.g., Sega Enterprises Ltd. v. MAPHIA, 857 F. Supp. 679, 687 (N.D. Cal. 1994) (knowledge established without prior cease-and-desist letter). Blizzard alleges that the Infringing Game is "almost entirely copied" from the Warcraft Games (FAC ¶¶ 2, 54), that the Infringing Game used the same character and equipment names as the Warcraft Games (id. at ¶ 55), that the Instantfuns websites included the keyword metatags "Blizzard," "Warcraft," and "WOW" (id. at ¶ 3), that Defendants created an app icon modeled on *World of Warcraft* (id. at ¶ 2), and that promotional materials for the Infringing Game feature *Warcraft* characters (id. at ¶ 58).  These allegations, in addition to the allegations regarding Joyfun's connections to Zroad Inc. and Zroad HK, are sufficient to satisfy the knowledge element of contributory infringement.

Second, Joyfun argues that neither Joyfun's posting of "online messages" promoting the Infringing Game, nor provision of services to facilitate payment by users, constitutes a material contribution.  Mot. at 19-20.  In the FAC, Blizzard claims that JoyFun advertised and promoted the Infringing Game ( ¶ 43), provided essential services for the Infringing Game (¶ 45), financed the Infringing Game (¶ 45), operated the Infringing Game's remote servers (¶ 44), and wrote code for the Infringing Game that allowed it to be monetized and to connect to the remote servers.  Id. ¶ 44. This combination of contributions is substantial and satisfies this element of contributory infringement.  See, e.g., Mophie, Inc. v. Shah, 2014 WL 10988339, at *7-8 (C.D. Cal., Jul. 24, 2014); see also A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001) ("[w]ithout the support services defendant provides, Napster users could not find and download the music they want with the ease of which [Napster] boasts.").

The Court finds that the FAC adequately states a claim for contributory infringement, and **denies** dismissal on this basis.

### c.    **Vicarious Infringement**

"[T]o succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement."  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1173 (9th Cir. 2007).  "[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1582 JVS (DFMx)                    Date    February 7, 2020

Title    **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al**

conduct, as well as the practical ability to do so." <u>Id</u>.

The Court agrees with Joyfun that Blizzard's allegations as to this allegation are conclusory and lack adequate support. Blizzard argues that "through the JoyFun SDK and its ownership of the remote servers for the Infringing Game, JoyFun possessed the ability at any time to block access to the Infringing Game by end-users, including users in the United States," but does not point to any specific allegations in the FAC that support this point. Opp'n at 10. The FAC alleges that the software, JoyFun SDK, "was integrated into the Infringing Game," and "enabled the Infringing Game to be monetized in the United States," and "to be advertised in the United States," but this does not amount to a "legal right to stop or limit the directly infringing conduct," given that the game was offered, for free, to customers. <u>See</u> FAC ¶ 44.[3] Blizzard specifically alleges that Wang "*supervised* the acts of infringement alleged herein, and personally benefitted or profited from the infringement." FAC ¶ 48. But this allegation is unsupported.

Because the control element is not satisfied, the Court finds that dismissal of the vicarious infringement claim is warranted, and **grants** Joyfun's motion for thsi cause of action.

**D.    Blizzard's Motion for Leave to Serve by Alternative Means**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Blizzard moves to serve Wang and Zhou by delivering a copy of the initiating documents (in English and Chinese) to Anderson & Anderson LLP ("A&A"), which represents Zroad HK and Zroad Inc. in this action. Mot., Dkt. No. 52. Blizzard points out that Wang and Zhou have filed declarations in support of Zroad HK and Zroad Inc.'s motions to dismiss claiming that they are the "sole owners" of these two entities. Declaration of Marc E. Mayer ("Mayer Decl."), Dkt. No. 36, Ex. 1 (Declaration of Howell Wang) ¶ 1; Dkt. No. 37-1 ¶ 1 (Declaration of Carly Zhou).

Blizzard argues that "Wang and Zhou are aware of this lawsuit, are directly involved in the defense of the ZRoad Defendants to this lawsuit, and appear to be in regular contact with A&A," and "cannot sign and submit sworn declarations in this action

---

[3] Blizzard focuses on the "limit" language in the test, but does not adequately explain how Joyfun's software allowed it to *block access* to the Game. Opp'n at 10.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |

| | |
|---|---|
| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |

while simultaneously refusing to appear as defendants." Mot at 2.  Accordingly, Blizzard argues that "[s]ervice of process via A&A is not just 'reasonably calculated' to give notice; Wang and Zhou *already* are aware of this lawsuit, and A&A can ensure that they have received all necessary initiating documents."  Mot. at 2.

The Court finds that service via A&A is appropriate.  The Motion asserts that neither can be located in the United States.  Id. at 5-6.  A&A has communicated with both, as they submitted declarations in this action.  Blizzard has attempted to serve the defendants by conventional means, but has so far been unsuccessful, and it appears that a backlog of requests through China's Ministry of Justice will mean that service on Wang could take over a year.  Id. at 8-9.  Meanwhile, Blizzard cannot locate Zhou's address.  Id. And the Hague Convention, the applicable international agreement here, does not prohibit this method of service.  See Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd., 2017 WL 1378532, at *2 (N.D. Cal. Apr. 11, 2017) ("Courts have held that the Hague Convention does not prohibit service on a foreign defendant through counsel based in the United States.").

The Court concludes that Blizzard's proposed method of service comports with constitutional notions of due process and is "reasonably calculated, under all the circumstances, to apprise [Wang and Zhou] of the pendency of the action and afford them an opportunity to present their objections."  See Rio Properties, 284 F.3d at 1016; see also Feyko v. Yuhe Int'l, Inc., 2013 WL 5142362, *2 (C.D. Cal. Sept. 12, 2013) ("[T]his court joins the others that have found that due process permits authorizing service on counsel for the company that employs foreign individual defendants.").

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Zroad HK's motion, **DENIES** Zroad Inc.'s motion, **GRANTS IN PART and DENIES IN PART** Joyfun's motion, and **GRANTS** Blizzard's motion.

## IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1582 JVS (DFMx) | Date | February 7, 2020 |
|---|---|---|---|

| Title | **Blizzard Entertainment, Inc. v. Joyfun Inc Co., Limited et al** |
|---|---|

|  |  | : | 0 |
|---|---|---|---|
|  | Initials of Preparer | lmb |  |